461 F.2d 754
 Joseph FETSKO, Administrator of the Estate of Patricia Ann
Fetsko, Deceased, Appellant,
v.
The GREYHOUND CORPORATION and Greyhound Lines, Inc.
Joseph G. GRESS, Administrator of the Estate of Mary Ellen
Gress, Deceased, Appellant,
v.
The GREYHOUND CORPORATION and Greyhound Lines, Inc.
v.
Joseph FETSKO, Administrator of the Estate of Patricia Ann
Fetsko, Deceased, (Third Party Defendant).
 Nos. 71-1415, 71-1416.
 United States Court of Appeals,
Third Circuit.
 Submitted March 21, 1972.
Decided May 23, 1972.
 
 Donald E. Ziegler, Catalano, Ziegler & Malone, Pittsburgh, Pa., for appellant.
 Herman C. Kimpel, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.
 Before ADAMS, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 In this diversity wrongful death case appellant Fetsko, administrator of the Estate of Patricia Ann Fetsko, and appellant Gress, administrator of the Estate of Mary Ellen Gress, appeal from an order granting a directed verdict at the end of the plaintiffs' case. The case arises out of an automobile accident which occurred on Route 51, Elizabeth Township, Allegheny County, Pennsylvania, on March 3, 1968. Decedent Fetsko was the driver of and decedent Gress was a passenger in an automobile which, while proceeding north on Route 51, skidded across the highway divider and was struck head on by a south bound bus operated by the defendant Greyhound Lines, Inc. Greyhound's motion for a directed verdict was predicated on the assertion that the plaintiffs had failed to establish a prima facie case of negligence on the part of its driver. There was no contention that the passenger, Gress, was contributorily negligent. Even as to the decedent driver, Fetsko, the district court declined to hold that the evidence conclusively established contributory negligence (132a), although that ground was advanced by Greyhound in support of its Rule 50(a) motion. The district court's ruling went solely to the failure of the proofs to establish that Greyhound's employee driver was negligent. Thus this appeal presents the issue whether the evidence, and reasonable inferences which could be drawn therefrom, viewed in the light most favorable to the party against whom the verdict was to be directed, would support a jury verdict that the Greyhound driver was negligent. Gizzi v. Texaco, Inc., 437 F.2d 308 (3d Cir.), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57 (1971); Denneny v. Siegel, 407 F.2d 433 (3d Cir. 1969). Appellants contend that the evidence, judged in this light, permitted a finding that the Greyhound driver was negligent because of excessive speed, inattentiveness, and failure to take evasive action.
 
 
 2
 The witness Wise, a coal truck operator, established that about noon on the day of the accident decedents' car was proceeding north on Route 51, a four lane highway with a center medial strip and a berm adjacent to the road on each side. He was in the right northbound lane, the first in line of three coal trucks. Decedents' car proceeded to pass the three trucks in the passing lane going about 50 miles per hour. He observed that another car was stopped in the passing lane to make a left hand turn into a place of business on the other side of the highway. Decedent applied the brakes and her car swerved over the center medial strip and collided, in the southbound passing lane, with the Greyhound bus, which at impact swerved to its left across both northbound lanes of traffic and down an embankment. He stopped his truck and came to the assistance of the bus driver, who told him that he did not see the auto in time to avoid the collision. (69a). He observed that in the lane where the brakes of decedent's car had been applied there were "ashes and so on along the edge of the medial strip." (70a). He expressed his opinion that the gravel on the roadway was the reason why decedent's car crossed over into the oncoming lane. (86a). The speed limit was 55 miles per hour for cars and 45 miles per hour for trucks. (65a).
 
 
 3
 The Greyhound driver, Shoaf, testified that he was proceeding south in the passing lane; that he did not observe a car stopped in the northbound passing lane to make a left hand turn (92a); that fifty or sixty feet before the intersection at which it was possible to make a left hand turn through the medial strip he had glanced to his left to look at the driver of a northbound coal truck to see if he recognized him. (97a, 103a). He applied his brakes before the accident. (98a). He first observed the decedent's car 70 or 80 feet from the point of impact. (102a). He did not see the decedent's car before it came over into his lane. (104a). The only evasive action he took was to put on the brakes. (102a).
 
 
 4
 The witness Taulton testified that he observed the Greyhound bus proceeding southbound in the passing lane. (115a et seq.). There was no traffic in the slow lane as the bus proceeded south in the passing lane toward the point of impact. (116a). He observed the bus for 700 feet prior to the impact. (117a). He estimated the speed of the bus at about 55 or 60 miles an hour when it passed him 400 feet prior to the impact and it did not decrease speed at any time before the impact. (119a). The speed limit on Route 51 was 50 miles an hour. (120a). This witness, although of tender years, was held to be testimonially qualified on the matters about which he testified. His testimony as to the speed of the bus, and as to the absence of traffic in the southbound slow lane, conflicted with that of Greyhound's driver.
 
 
 5
 Greyhound's answer to interrogatories admitted in evidence established that the bus left skid marks for a distance of 71 feet and that there were no obstructions to prevent the bus driver from seeing the decedent's car as he approached the point of impact. (61a).
 
 
 6
 Appellants contend that from the foregoing evidence the jury could have concluded that the Greyhound bus was proceeding southerly in the passing lane at a speed in excess of the legal limit; that the driver, instead of continuing his forward observation glanced to the left to observe a coal truck driver; that when the decedent's car skidded into the southbound lane there was unobstructed space in the right hand southbound lane in which to take evasive action; that instead the bus never slowed down until the impact, and took no evasive action other than attempting to brake; that the braking attempt failed because of the excessive speed and the driver's tardy observation.
 
 
 7
 The district court properly concluded that a jury question was presented, as to the contributory negligence of the decedent Fetsko, the driver, by the evidence that gravel in the roadway caused her car to skid into the southbound lane. See, e. g., Sowizral v. Hughes, 333 F.2d 829, 835 (3d Cir. 1964). There is no issue of contributory negligence in the case of the decedent Gress, the passenger.
 
 
 8
 The Pennsylvania decisions dealing with the duty of a driver with respect to cars crossing into his lane of traffic are discussed in Haddingan v. Harkins, 441 F.2d 844 (3d Cir. 1970). A driver may assume that another driver will stay in his own lane. Hughes v. Zearfoss, 194 Pa.Super. 408, 168 A.2d 628 (1961); Nixon v. Chiarilli, 385 Pa. 218, 122 A.2d 710 (1956); Adley Express Co. v. Willard, 372 Pa. 252, 93 A. 2d 676 (1953). He may not, however, disregard an observable extreme hazard. Sudol v. Gorga, 346 Pa. 463, 31 A.2d 119 (1943). Which rule applies depends, of course, on the particular facts of each case. In Haddigan v. Harkins, supra, we held that the court correctly submitted to the jury the issue of negligency of the drivers into whose lane another car had intruded. The facts evidencing their possible disregard of an observable hazard were in one sense stronger than here, in that greater distances and times of unobstructed opportunity to observe were involved. On the other hand there was no evidence of excessive speed and no testimony tending, as here, to show that the drivers were looking elsewhere than at the road ahead of them. The sudden emergency cases such as Antonson v. Johnson, 420 Pa. 558, 218 A.2d 123 (1966) and Skrutski v. Cochran, 341 Pa. 289, 19 A.2d 106 (1941) do not support the directed verdict here, for they depend upon the absence of any proof either of excessive speed or of inattentiveness on the part of the driver. There was some evidence of both in this case. Moreover sudden emergency is a matter of defense, and the defense is not available to a driver whose own conduct creates the emergency. See, e. g., Chadwick v. Popadick, 399 Pa. 88, 159 A.2d 907 (1960).
 
 
 9
 We conclude that there was some evidence tending to show that the deaths of plaintiffs' decedents were caused by the inability of the Greyhound bus driver to take available evasive action, and that this inability was the result of his excessive speed and inattention. That evidence was sufficient to avoid a directed verdict. The case on liability was hardly a strong one, but it was sufficient to require submission of that issue to the jury.
 
 
 10
 The judgment of the district court will be reversed and the case remanded for a new trial.
 
 
 11
 HUNTER, Circuit Judge (dissenting).
 
 
 12
 I must respectfully disagree with the conclusion of my brethren in this case. I believe that the jury could not reasonably have found that any negligence of the bus driver was a proximate cause of the accident, and thus I would affirm the directed verdict for the defendant.
 
 
 13
 The plaintiffs argue that the jury might have found negligence in one or more of three distinct ways:
 
 
 14
 1. Excessive speed. Although the bus driver himself testified that he had been traveling 35 miles per hour immediately before the accident, the witness Taulton testified that he had seen the bus about 400 feet before the impact, that he estimated its speed to be 55-60 miles per hour, and that the bus did not slow down thereafter. The speed limit was 55 miles per hour for cars and 45 miles per hour for trucks, according to the witness Wise, or 50 miles per hour, according to the Witness Taulton. The witnesses are inconsistent in their testimony, and I must agree with the majority that credibility questions are for the jury. But I disagree that excessive speed could have been found to be a proximate cause of the accident. The only evidence before the jury as to the distance between the bus and the plaintiffs' Corvette at the time the Corvette crossed the median was the bus driver's estimate that the crossing took place 70-80 feet in front of him. Given the forward motion of the Corvette, the forward motion of the bus, and the distance separating the two vehicles, even if the jury found that the bus was moving somewhat in excess of the speed limit, because the two vehicles were so close together at the time that the Corvette skidded into the bus's lane, I see no reasonable inference that the bus's excessive speed, if any, was a factor in causing the plaintiffs' damages.
 
 
 15
 2. The driver's inattention. The driver's own testimony is that sometime prior to the accident he glanced over into the northbound lanes to see if the driver of a northbound truck was an acquaintance. The plaintiff argues that this testimony might be taken as indicating that the driver was not watching the road ahead. But after reading the transcript I see no reasonable inference to be drawn except that (1) the driver glanced briefly at the approaching traffic, and did not divert his eyes from the road ahead of him for more than an instant, and (2) the glance took place sometime before the time that the Corvette skidded into the lane ahead of the bus. I see no reasonable inference of negligence. In addition, for reasons similar to those above with respect to excessive speed, I see no reasonable inference that the driver's inattention could have been a proximate cause of the accident.
 
 
 16
 3. Lack of evasive action. The plaintiff argues that the jury might have found negligence in the bus driver's failure to swerve to his right to avoid the Corvette. But even if we accept the dubious assumption that a 29,000-pound bus can be physically swerved into another lane in so short a distance, there was testimony which was not contradicted[1] that there were cars in the right southbound lane next to the bus at the point of impact, making such a swerve impossible. I see no reasonable inference of negligence from the bus driver's failure to swerve.
 
 
 17
 For the reasons stated, I would affirm.
 
 
 
 [1]
 The bus driver testified in some detail about the traffic to his right (90a-91a). The only evidence that can be taken as contradictory is the witness Taulton's testimony that he did not observe heavy traffic on the road at a time prior to the accident when he crossed the road, and that he did not observe cars traveling in the slow lane as the bus approached him, some 400 feet from the ultimate point of impact (115a-116a)